# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|                     Plaintiff, | ) |
| vs. | ) Case No. CR-15-53-M-2 |
| MICHAEL SHANDELON BROWN, | ) |
|                     Defendant. | ) |

## ORDER

Before the Court is defendant Michael Shandelon Brown's (hereinafter, "defendant") Motion to Supress and Brief in Support, filed April 12, 2015. On April 21, 2015, the government filed a response. On May 28, 2015, the Court held a hearing on the motion to suppress. Based upon the parties' submissions and the evidence presented at the hearing on the motion to supress, the Court makes its determination.

I.    Introduction

In February of 2015, a confidential informant provided information to Detective Jeff Reed ("Detective Reed") that Anthony Anderson ("Anderson"), an alleged member of the Rollin' 90s Crips, was distributing cocaine in the Western District of Oklahoma from his white Honda Civic. After a registration check of the Honda Civic revealed that the vehicle was registered to a residence at 3344 S.W. 24th Street, Oklahoma City, Oklahoma, Detective Reed started surveilling the house. During his surveillance, Detective Reed observed two black males arrive at the residence in a Kia Forte and enter the residence. After a few minutes, Detective Reed observed Anderson exit the residence and look into the Honda Civic. However, Detective Reed was not able to ascertain whether Anderson placed/retrieved anything in/from the Honda

1

Civic. Subsequently, Detective Reed contacted Lieutenant Coniglione of the Oklahoma City Police Gang Enforcement Unit and instructed him to establish a perimeter and make a traffic stop on the Kia Forte. The two black males exited the residence and left the house in the Kia Forte heading eastbound on S.W. 24th Street, and turned south onto S. Independence Avenue. Approximately around the 2500 block of Independent Avenue, Sergeant Richie and Lieutenant Coniglione allegedly observed the Kia cross the center line of the road. Sergeant Ritchie turned his emergency equipment on prompting the Kia to stop at approximately S.W. 28th Street and Independence Avenue. As the Sergeant approached the vehicle, the Kia accelerated in an attempt to elude the officers. After a brief pursuit, the Kia stopped around S.W. 21st Street and the driver, identified as Michael Brown, and the passenger, identified as Daryl Ingram[1], were apprehended by law enforcement and taken into custody.

During the search of the Kia, the officers found, in a black bag placed on the passenger side of the Kia, 709 grams of cocaine and $4,980.00. On March 17, 2015, a grand jury returned an Indictment against defendant for one count of "possession of a Controlled Substance with Intent to Distribute", in alleged violation of Title 21, Section 841 of the United States Code. On March 24, 2015, defendant was arraigned.

II.     Discussion

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (internal quotations and citation omitted). A routine traffic stop is analyzed under the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* To determine the reasonableness of an

---

[1] Daryl Ingram is a co-defendant in this case but is not the subject of this motion to suppress.

investigative detention, a court engages in a two-part inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.*

Defendant asserts that the traffic stop violated his Fourth Amendment rights because it was not justified at its inception. In response, the government asserts that the traffic stop was justified at its inception because the officers (1) observed defendant committing a traffic violation, (2) had reasonable suspicion that criminal activity was a foot, and (3) had reasonable suspicion that a fugitive was in the car. For the reasons set forth below, the Court finds that the traffic stop was justified at its inception because the officers observed defendant commit a traffic violation, and thus, the Court need not address the government's remaining basis for justifying the traffic stop.

> An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether the particular officer had reasonable suspicion that the particular motorist violated any . . . of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*Id.* at 1348 (internal quotations and citations omitted).

In the case at bar, the government asserts that the officers observed defendant violate the State of Oklahoma and Oklahoma City's traffic laws. Chapter 32, Section 192 of the Oklahoma City Municipal Code provides:

> (a) Upon all roadways of sufficient width a vehicle shall be driven to the right of the center of the roadway, except as follows:

3

(1) when overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
(2) when the right half of a roadway is closed to traffic while under construction or repair;
(3) upon a roadway divided into three marked lanes for traffic under the rules applicable thereon;
(4) Upon a roadway designated and signposted for one-way traffic, all slow-moving vehicles shall be driven as closely as possible to the right curb of the street or roadway except when overtaking and passing other vehicles as provided herein. Official signs may be erected directing slow-moving traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway and drivers of vehicles shall obey the direction of such signs.
(b) All vehicles shall keep to the right roadway on all streets or highways which are divided into two roadways.
(c) At the intersection of streets or highways with a railroad right-of-way, all vehicles shall keep to the right of the center of the street or highway.

Okla. City, Ordinances ch. 32, art. V, § 192. In addition, Oklahoma state law similarly provides "[u]pon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway[.]" Okla. Stat. tit. 47, § 11-301(A).

Having carefully reviewed the parties' submissions and having heard the evidence presented at the hearing, the Court finds that the traffic stop was justified at its inception. Specifically, the Court finds that the officers had reasonable suspicion that defendant committed a traffic violation. In their reports, both officers state that they observed defendant's vehicle veer into the center lane of the road and correct its position shortly. In addition, Lieutenant Coniglione, whom the Court finds to be a credible witness, testified that he observed the vehicle veer into the center lane about a quarter length of the body of the car and within brief seconds correct its position. There is no evidence in the record that any of the applicable exceptions listed in Section 32-192 or Section 11-301(A) are present in this case. The Court finds that this amounts to an observed traffic violation giving rise to a reasonable inference that a traffic violation has occurred. "[Tenth Circuit] precedents leave no room to doubt the validity of a

4

traffic stop based on an observed traffic violation." *United States v. Winder*, 557 F.3d 1129, 1135 (10th Cir. 2009).

Further, Section 32-192 states that a vehicle "shall" be driven on the right side of the road as opposed to Section 32-191 which governs lane changes and gives drivers more leeway by instructing that a vehicle shall be driven within a single lane "as nearly as practical". *Compare* Okla. City, Ordinances ch. 32, art. V, § 192, *with* Okla. City, Ordinances ch. 32, art. V, § 191. Section 11-301(A) also omits the "as nearly as practical" language. *See* Okla. Stat. tit. 47, § 11-301(A). The omission of the "as nearly as practical" language in Section 32-192 and Section 11-301(A) is a clear indication that strict compliance is required. *Cf. United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996) (finding a single incident of crossing over into the right shoulder of the road way was not sufficient to justify a stop by itself under the facts of the case because the statute at issue requires only that the vehicle remain entirely in a single lane "'as nearly as practical'" thereby warranting the need to objectively analyze the surrounding circumstances in determining whether the officer had reasonable suspicion that a violation of the statute has occurred).

Moreover, even if the Court were to consider the surrounding circumstances at the time of the violation, the Court finds that the traffic stop would still be justified at its inception. Lieutenant Coniglione testified that at the time of the traffic stop, the weather was sunny and not particularly windy, there were no other pedestrians, objects, or traffic nearby to justify the swerving, and the driving conditions were as "as good as any". Further, a review of the pictures depicting the blocks on this particular road shows that these roads are not particularly windy roads.

Accordingly, the Court finds that, under these facts, defendant's Fourth Amendment rights were not violated as the officers had reasonable suspicion that defendant committed a traffic violation when the Kia veered into the center lane.

III. Conclusion

For the reasons set forth above, the Court DENIES defendant's Motion to Suppress and Brief in Support [docket no. 42].

**IT IS SO ORDERED this 3rd day of June, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE